IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| JILL MARIE FENTON, § | |
| § | |
| Plaintiff, § | |
| § | |
| v.                             § | Civil Action No. 3:13-CV-0029-N-BK |
| § | |
| CAROLYN W. COLVIN, § | |
| Acting Commissioner of Social Security, § | |
| § | |
| Defendant.                  § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION

This case has been referred to the undersigned for Findings, Conclusions, and Recommendation. The cause is now before the Court on Plaintiff's *Motion for Summary Judgment* (Doc. 16) and Defendant's *Motion for Summary Judgment* (Doc. 17). For the reasons that follow, it is recommended that Defendant's *Motion for Summary Judgment* be **GRANTED**, Plaintiff's *Motion for Summary Judgment* be **DENIED**, and the Commissioner's decision be **REVERSED** and the case be **REMANDED**.

### I. BACKGROUND[1]

**A.     Procedural History**

Plaintiff seeks judicial review of a final decision by the Commissioner denying her claim for Supplemental Security Income ("SSI") under the Social Security Act ("the Act"). In March 2010, Plaintiff filed her SSI application, alleging that she had been disabled since January 1993 due to scoliosis. (Tr. 123-29, 141). The Commissioner denied Plaintiff's application at all

---

[1] The following background comes from the transcript of the administrative proceedings, which is designated as "Tr."

1

administrative levels, and she now appeals to this Court pursuant to 42 U.S.C. § 405(g). (Tr. 3-5, 15-22, 54-56, 62, 68-75, 79).

**B.     Factual Background**

Plaintiff was born in December 1984, and was 25 years old when she filed her SSI application. (Tr. 21). She had a high school education and no past relevant work. *Id.* In 1995, Plaintiff was diagnosed with scoliosis affecting her thoracic and lumbar spine. (Tr. 18, 301). She has undergone five corrective surgeries: (1) a spinal rod implantation in 1997; (2) a fusion repair with rod replacement in 1999; (3) a rib resection in 2001; (4) a thoracoplasty (removal of portions of the rigid chest wall)[2] in 2002; and (5) a thoracoplasty revision in 2003 due to a deformity of the rib stumps, including the removal of several small sections of rib. (Tr. 18, 33, 146, 148, 230, 272-273, 275). In September 2003, Plaintiff's surgeon referred her to Renaud Rodrigue, M.D. for pain management. (Tr. 252). Dr. Rodrigue diagnosed her with chronic intercostal neuralgia (severe chest wall pain), thoracic post-surgical pain, and chronic pain syndrome. *Id.* An x-ray revealed that she has chest wall deformities as a result of her scoliosis. (Tr. 260).

Throughout the years of her treatment with Dr. Rodrigue, Plaintiff complained of severe low and/or mid-back pain, that was often constant, for which he prescribed various medications. (Tr. 198-210, 212, 215, 217-20, 222-23, 225-26). Between 2005 and April 2010, Plaintiff's pain ranged from a low of one to a high of eight on a scale of one to ten, and most often was a seven. *Id.* She described the pain as stabbing, pins and needles, dull, and throbbing in nature. (Tr. 201,

---

[2] Medical terms are defined by reference to *Stedman's Medical Dictionary* (27th ed) available on Westlaw.

207, 209, 215). In January 2005, office notes state that Plaintiff has multi-level degenerative spine disease, and the spinal imaging studies clearly supported the fact that the spine was a major source of her pain. (Tr. 225). Plaintiff sometimes noted that her medication regimen was effective and kept her pain under control, but changes in her medications were necessitated as they became less effective over time. (Tr. 200-01, 214-217, 219). Nerve blocks did not alleviate the pain at all. (Tr. 224). Plaintiff's June 2007 examination showed significant multilevel segmental tenderness with palpation of the lumbar spine. (Tr. 215). In January 2008, Plaintiff complained of having constant sharp headaches that started four months earlier, and she was prescribed additional medication for breakthrough pain. (Tr. 212). Even with the medication, however, Plaintiff continued to complain of stabbing head pain. (Tr. 207, 209).

In April 2009, Plaintiff became pregnant. (Tr. 204). Her medications were limited to an antidepressant and morphine for pain. *Id.* Plaintiff's pain was persistent but manageable throughout her pregnancy, and she delivered her son by Caesarean section due to her back problems. (Tr. 200, 230). In January 2010, Plaintiff reported that her thoracic pain was extensive and almost constant, and examination showed tenderness throughout her thoracic spine although there was no evidence of paraspinal fasciculation (involuntary muscle contractions) or atrophy. (Tr. 200). Her medications were changed again in an effort to control her pain. *Id.* Nevertheless, throughout 2010, Plaintiff continued to have constant mid-back pain, neck pain, and headaches, which she rated as seven on a ten-point scale. (Tr. 198-199, 248, 250).

In April 2010, Dr. Rodrigue provided a medical source opinion, stating that he treated Plaintiff for post-thoracotomy syndrome, chronic pain syndrome, and chest wall pain. (Tr. 228). He noted that Plaintiff had undergone extensive surgery, and he believed she was "disabled by

3

her pain condition, due to the pain itself, as well as the adverse effects of the medications required to treat her pain." *Id.* Further, Dr. Rodrigue stated that "I am not qualified, nor am I trying to make any assessment of her actual functional capacity, but I do believe . . . her condition will make her unable to render meaningful employment." *Id.*

In May 2010, Plaintiff underwent a consultative examination with Harold Nachimson, M.D. (Tr. 230- 234). She measured 5'2" and weighed 99 pounds. (Tr. 232). She reported that she had been diagnosed with scoliosis in 1995 and despite multiple surgeries, she had low back pain that radiated to her knees and sometimes into her elbows and wrists. (Tr. 230). Plaintiff stated that she could walk only two to three blocks, but her ability to do so depended on her pain level. (Tr. 231). She experienced shortness of breath due to decreased lung volume and was unable to take a deep breath. *Id.* She also had sporadic vertigo with one or two episodes of falling. *Id.* On physical examination, she had decreased rotation in her neck. (Tr. 232). She had predominant scoliosis all through the thoracic and upper lumbar region and could hyperextend 15 degrees and flex 70-75 degrees. *Id.* Plaintiff had full range of motion and muscle tone in her upper extremities, and no loss of sensation in her arms or legs. (Tr. 233). Plaintiff stated that she had reduced lung capacity due to compression on her lungs. *Id.* An x-ray of her spine showed "moderately severe" scoliosis with evidence of previous bone fusion surgery. (Tr. 234). Dr. Nachimson's clinical impression included scoliosis, secondary joint symptoms due to posture abnormalities, and chronic pain. (Tr. 233). Plaintiff also underwent pulmonary function testing, which showed that she could not blow long enough for a good reading, even with additional coaching, despite making a good effort. (Tr. 255).

In July 2010, Dr. Rodrigue provided another statement regarding Plaintiff's ability to

work. (Tr. 252). He noted that Plaintiff was limited by her surgical fusion and pain, but that he would defer to her surgeons as to her specific limitations because he was "unqualified to do any kind of physical or functional assessment." *Id.* Dr. Rodrigue further observed that Plaintiff's prognosis was poor because he did not "believe the pain will ever get better and will probably worsen over time as she becomes more tolerant to the medications and from the process of aging. My personal opinion is that [Plaintiff] cannot work under these pain conditions." *Id.*

In March 2011, Plaintiff asked Dr. Rodrigue to change her medications because her muscle relaxer was not working, and she was having difficulty sleeping. (Tr. 264). She stated that she continued to experience burning, aching, pins and needles, and stabbing pain in her thoracic spine and low back, as well as pain radiating into her left leg. *Id.* Dr. Rodrigue observed that Plaintiff's medication regimen had made a big difference in the quality of her life because her pain was controlled to the degree that she was able to get up and perform activities of daily living and "function to some degree." *Id.* On examination, Plaintiff had paraspinal tenderness and pain with range of motion in her lumbar spine. (Tr. 265). She had decreased range of motion with lateral bending in both directions, decreased forward flexion, decreased sensation over the left L4, L5, and S1 dermatomes, and her deep tendon reflexes were diminished globally on the left side. *Id.*

C.  **Administrative Hearing Testimony**

At the administrative hearing, Plaintiff testified that even with medication, she was in excruciating pain all of the time, and she rated her pain as eight on a ten-point scale. (Tr. 34-35). The medications she took for pain relief made her drowsy. (Tr. 35). She stated that she did not really have limitations in using her arms or hands, but a couple of times a month her lower back

pain was so bad that she could not walk. (Tr. 37, 42-43). Plaintiff testified that she was not aware that she was in labor with her son because she was accustomed to having severe back pain all of the time. (Tr. 40, 42). She described both her regular back pain and her labor pain as eight on a ten-point scale. (Tr. 42).

### D.  The ALJ's Findings

In May 2011, the ALJ found that Plaintiff had the severe impairment of scoliosis, but the impairment did not meet or equal the parameters of any listed impairment. (Tr. 17). The ALJ then concluded that Plaintiff retained the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 416.967(b), except that she could only stand for four to six hours in an eight-hour workday, could not climb ladders, and should avoid dangerous machinery. *Id.* In terms of Plaintiff's credibility, the ALJ determined that her statements concerning the intensity, persistence, and limiting effects of her symptoms were not credible to the extent they were inconsistent with his RFC assessment, the objective medical evidence, and Plaintiff's reported activities. (Tr. 18, 20). The ALJ rejected Dr. Rodrigue's opinions as unsupported by objective medical evidence and noted that his "assessment is not considered reflective of treatment records or the claimant's ability to function." (Tr. 20). Next, the ALJ found that Plaintiff did not have any past relevant work, but based on vocational expert testimony, the ALJ determined that she could perform other work existing in significant numbers in the national economy, including the jobs of ticket seller, cashier, and order clerk. (Tr. 21-22). The ALJ thus found that Plaintiff was not disabled within the meaning of the Act. (Tr. 22).

## II.  APPLICABLE LAW

An individual is disabled under the Act if, *inter alia*, he is unable "to engage in any

substantial gainful activity by reason of any medically determinable physical or mental impairment" which has lasted or can be expected to last for at least 12 months. 42 U.S.C. § 423(d)(1)(A). The Commissioner uses the following sequential five-step inquiry to determine whether a claimant is disabled: (1) an individual who is working and engaging in substantial gainful activity is not disabled; (2) an individual who does not have a "severe impairment" is not disabled; (3) an individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors; (4) if an individual is capable of performing his past work, a finding of "not disabled" must be made; (5) if an individual's impairment precludes her from performing her past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if any other work can be performed. *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. §§ 404.1520(b)-(f), 416.920 (b-(f)).

Under the first four steps of the analysis, the burden of proof lies with the claimant. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id.* If the claimant satisfies her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant can perform. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

Judicial review of the Commissioner's denial of benefits is limited to whether the

Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan*, 38 F.3d at 236; 42 U.S.C. §§ 405(g), 1383(C)(3). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett*, 67 F.3d at 564. Under this standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236.

### III.  ARGUMENT AND ANALYSIS

On appeal, Plaintiff raises the following four issues, not all of which need to be addressed for the reasons discussed below: (1) whether the ALJ properly considered the opinion of Plaintiff's treating physician; (2) whether the ALJ properly considered Plaintiff's complaints of pain; (3) whether the ALJ's RFC assessment accounted for all of Plaintiff's limitations; and (4) whether substantial evidence supports the ALJ's Step 5 determination.

In Claim 1, Plaintiff argues that the ALJ did not evaluate the opinions of Dr. Rodrigue, her treating physician, according to the factors set forth in 20 C.F.R. § 416.927 and, instead, incorrectly dismissed Dr. Rodrigue's opinions as unsupported by the medical record. (Doc. 16-1 at 11-12; Doc. 19 at 1-2). Plaintiff urges that this Court should reverse and remand because the ALJ failed to provide good reasons for rejecting Dr. Rodrigue's uncontroverted opinions. (Doc. 16-1 at 14).

Defendant maintains that the ALJ properly rejected Dr. Rodrigue's opinions that Plaintiff's pain was disabling because the determination of disability is the ALJ's responsibility. (Doc. 18 at 10-12). Further, Defendant asserts that the ALJ was not required to conduct a more

8

thorough analysis of the factors in section 416.927 because there was "competing first-hand medical evidence" in the form of Dr. Nachimson's consultative exam which supported the ALJ's decision to discount Dr. Rodrigue's opinions. *Id.* at 13-14.

When a treating physician's opinion about the nature and severity of a claimant's impairment is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence, the Commissioner must give that opinion controlling weight. *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000). "The opinion of a specialist generally is accorded greater weight than that of a non-specialist." *Paul v. Shalala*, 29 F.3d 208, 211 (5th Cir. 1994). A treating physician's opinion may be given little or no weight when good cause exists, however, such as "where the treating physician's evidence is conclusory [or] is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques." *Newton*, 209 F.3d at 455-56. Nevertheless, "absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527[c]." *Id*. at 453 (emphasis in original). Under that section, before the Commissioner can reject a treating doctor's opinion, he must consider the following six factors: (1) the physician's length of treatment of the claimant; (2) the physician's frequency of examination; (3) the nature and extent of the treatment relationship; (4) the support for the physician's opinion afforded by the medical evidence of record; (5) the consistency of the opinion with the record as a whole; and (6) the specialization of the treating physician. *Id.* at 455-56. When an ALJ fails to apply the six-factor test, the case should be remanded. *See id.* at 456.

The opinions that Plaintiff claims the Commissioner should have evaluated more closely are Dr. Rodrigue's statements that (1) Plaintiff was "disabled by her condition" due to pain and the adverse side effects of the medications required to treat her pain; and (2) Plaintiff's prognosis was poor because he did not "believe the pain will ever get better and will probably worsen over time as she becomes more tolerant to the medications and from the process of aging. My personal opinion is that [Plaintiff] cannot work under these pain conditions." (Doc. 16-1 at 11). An opinion that a claimant cannot work is one that is reserved to the Commissioner. *See* SSR 96-5p, 1996 WL 374183, at *2 (providing that such a statement is never entitled to controlling weight); 20 C.F.R. § 416.927(d) (stating that an opinion by a physician that a claimant is disabled is not a medical opinion, but is an opinion on an issue reserved to the Commissioner because it is case dispositive). The Court of Appeals for the Fifth Circuit has reached the same conclusion. *See Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003) (holding that a doctor's opinion that a claimant is disabled is entitled to no special significance because such a determination is a legal conclusion reserved to the Commissioner). Dr. Rodrigue's opinions about Plaintiff's inability to work thus were not medical opinions to which the ALJ was required to apply the six factors of section 416.927(c). *Id.*

Nevertheless, Dr. Rodrigue did diagnose Plaintiff with chronic pain syndrome, among other things, and he noted that she suffered from adverse side effects from her necessary medications, her prognosis was poor, and he did not believe her pain would ever get better and would probably worsen over time. (Tr. 252). These opinions were within the scope of his expertise. As such, the ALJ was required to engage in the six-step analysis set forth in section 416.927(c). The ALJ did not discuss the six factors, however, and he cited to no medical

evidence from any other treating or examining physician that controverted Dr. Rodrigue's opinion. *Newton*, 209 F.3d at 453, 458 (holding that remand was required where the ALJ summarily rejected the treating physician's opinion, there was no competing first-hand medical evidence, and the ALJ relied solely on the testimony of a non-specialty medical expert who had not examined the claimant). While the ALJ did discuss the findings that examining physician Dr. Nachimson made, his conclusions did not controvert Dr. Rodrigue's findings as Dr. Nachimson did not discuss Plaintiff's prognosis, the side effects of her medications, or whether her pain would improve or worsen over the long term. Thus, Dr. Nachimson's conclusions were not "competing." Accordingly, remand is required so that the ALJ can properly address Dr. Rodrigue's opinion. *Id.* at 456; *see also Locke v. Massanari*, 285 F.Supp.2d 784, 795 (S.D. Tex. 2001) (finding that an ALJ's failure to consider the criteria set out in section 404.1527(d) required remand); *Yearout v. Astrue*, 2010 WL 4860784, *11 (N.D. Tex.) (Ramirez, M.J.) (same), *adopted by* 2010 WL 4929108 (N.D. Tex. 2010) (Lindsay, J.). Because reversal is warranted on this ground, the remaining issues need not be addressed because Plaintiff can raise them on remand. 20 C.F.R. § 416.1483 (providing that when a case is remanded from federal court, the ALJ may consider any issues relating to the claim).

## IV.  CONCLUSION

For the foregoing reasons, Plaintiff's *Motion for Summary Judgment* (Doc. 16) should be **GRANTED**, and Defendant's *Motion for Summary Judgment* (Doc. 17) should be **DENIED**.

**SO RECOMMENDED** on August 26, 2013.

_____
RENÉE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND
### NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

_____
RENÉE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE